UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| THE UNITED STATES OF AMERICA, ex rel. CHARLES W. HOUPT,<br><br>               Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, N.A.,<br><br>               Defendant. | Case No. 4:17-cv-00377-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it four motions: (1) Plaintiff's Motion for Partial Summary Judgment (Dkt. 22); (2) Defendant's Motion for Summary Judgment (Dkt. 24); (3) Relator's 56(f) [sic] Motion for a Continuance of Defendant's Motion for Summary Judgment to Allow for Additional Discovery (Dkt. 30); and (4) Plaintiff's Motion for Order of *Duces Tecum* Deposition for Certain SBA Employees (Dkt. 32).

Plaintiff/Relator Charles Houpt brings this action against Wells Fargo Bank National Association (Wells Fargo) pursuant to the False Claims Act (FCA), 31 U.S.C. § 3729 *et. seq*., and the Financial Institutions Reform and Enforcement Act (FIRREA),

12 U.S.C. § 1833a. Houpt alleges that Wells Fargo presented a false or fraudulent claim for payment to the Small Business Administration (SBA); made false statements to the SBA; and, withheld material information from the SBA related to an SBA loan secured by the Houpts' real and personal property. He seeks civil penalties under FIRREA for the bank's allegedly false claims.

Having carefully considered the record, oral argument from both parties on January 23, 2019, and relevant authority, the Court will grant Defendant's motion for summary judgment and deny Plaintiff's motion for partial summary judgment, for the reasons explained below. And, Plaintiff's motion to continue and his motion to take the deposition of SBA employees will be denied.[1]

## FACTS

### 1.  Background - The SBA Loan and the State Court Litigation[2]

The dispute between Relator Charles Houpt and Wells Fargo has a long history which began in 1993, when Gail and Charles Houpt executed a promissory note in the

---

[1] All parties have consented to the jurisdiction of a magistrate judge to enter final orders in this case. (Dkt. 14.)

[2] In support of his motion for partial summary judgment, Houpt submitted an affidavit, as did his counsel, with documents attached evidencing the loan and later events. In support of its motion for summary judgment, Wells Fargo submitted the various decisions issued by the District Court of the Seventh Judicial District of the State of Idaho, in and for the County of Bonneville, which found certain facts during state court litigation between the Houpts and Wells Fargo. Houpt submitted also the Idaho Supreme Court decision in *Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 184, 370 P.3d 384, 387 (2016), requesting that the Court "take judicial notice of [the Idaho Supreme Court opinion], including its findings of facts and holdings." (Dkt. 22-3.) The background facts set forth here are taken from the state court memorandum decisions and the documents evidencing the loan, as well as from proceedings in the Bankruptcy Court for the District of Idaho.

original principal amount of $312,800 to American Bank of Commerce ("ABC"). The loan was secured by both personal property and real property commonly identified as 1954 S. Yellowstone Highway in Idaho Falls, Idaho (the "Property"). The Houpts granted a deed of trust to ABC as beneficiary, and to First American Title Company ("FATCO") as Trustee, which was recorded in Bonneville County as Instrument Number 846613 on or about March 19, 1993. The loan was subject to the United States Small Business Administration ("SBA") Guarantee under the ABC Note and Deed of Trust.[3]

Between July of 1994 and April of 2001, several bank mergers occurred. These bank mergers eventually resulted in the ABC Note being assigned to Wells Fargo Bank Northwest National Association. On February 5, 2004, Wells Fargo purchased most of the assets and liabilities of Wells Fargo Bank Northwest, and by means of that transaction, Wells Fargo obtained ownership of the obligation owing under the ABC Note and ABC Deed of Trust. *Houpt v. Wells Fargo*, No. CV2012-3518 (Idaho, 7th Dist, Jan. 7, 2014) (Mem. Dec. and Order re: Motions for Summary Judgment). (Dkt. 27-1.) At the time of the asset purchase, Wells Fargo did not record an assignment of the ABC Deed of Trust. *Houpt v. Wells Fargo Bank, Nat. Ass'n*, 160 Idaho 181, 184, 370 P.3d 384, 387 (2016).[4]

---

[3] The SBA Guarantee Agreement indicated that the SBA guaranteed the loan in the amount of 82.1%.

[4] According to the Declaration of Gary Glorfield, the custodian of records for Wells Fargo, the ABC Note and Deed of Trust were assigned to Wells Fargo by Wells Fargo Bank, Northwest, N.A., on February 4, 2004. (Dkt. 26.)

Beginning in November of 2007, the Houpts failed to make numerous payments on the ABC Note to Wells Fargo. Although they were able to bring their payments current on several occasions prior to November 10, 2009, they made no payment to Wells Fargo after November 10, 2009. *Id.*

In or about May of 2010, following the Houpts' initial default on the ABC Note, Wells Fargo asked the SBA to pay the guaranteed portion of the loan balance. At that time, the balance due on the ABC Note was $69,164.13. On May 4, 2010, the SBA paid the loan guarantee to Wells Fargo. Decl. of Glorfield ¶ 6. (Dkt. 26.) Wells Fargo received $56,240.50. *Houpt*, 370 P.3d at 395.

In October of 2010, Wells Fargo initiated non-judicial foreclosure proceedings against the Houpts' Property. On October 18, 2010, FATCO recorded a Notice of Trustee's Sale, indicating ABC was the beneficiary of the Deed of Trust. The sale date was set for February 17, 2011. On February 16, 2011, the Houpts filed a bankruptcy petition under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Idaho, Case No. 11-40182-JDP, which stayed the foreclosure proceedings.

On February 14, 2012, the Bankruptcy Court granted stay relief to Wells Fargo, and the bank resumed foreclosure proceedings. On March 5, 2012, FATCO filed an Amended Notice of Default, Instrument No. 1411255, stating the ABC Note was in

default with an unpaid principal balance of $62,452.66,[5] accrued interest in the amount of $11,338.06, and legal and other fees in the amount of $50,381.82, for a total amount due of $124,172.54. On March 15, 2012, FATCO filed a new Notice of Trustee's Sale, stating "Beneficial Interest is now held by Wells Fargo Bank, National Association, by merger agreement dated February 5, 2004." The date of the new sale was set for July 17, 2012. *Houpt*, 370 P.3d at 388.

On June 22, 2012, the Houpts filed a Complaint and Motion for Preliminary Injunction in the District Court of the Seventh Judicial District of the State of Idaho, in and for the County of Bonneville, against Wells Fargo, claiming, among other things, that Wells Fargo's actions constituted wrongful foreclosure. The Houpts sought to halt the sale of the Property.

During the state court litigation, on August 24, 2012, Wells Fargo obtained a written assignment of the ABC Note and Deed of Trust from Wells Fargo Northwest, and recorded the assignment in the records of Bonneville County on September 4, 2012. On September 17, 2012, the state district court denied the Houpts' motion for preliminary injunction, noting that Wells Fargo had recorded the assignment of the Deed of Trust.

Wells Fargo resumed foreclosure proceedings on the Property, but in June of 2013, the Houpts found a buyer for the Property outside of the foreclosure proceedings. On July 16, 2013, the Houpts and Wells Fargo filed a stipulation with the state district

---

[5] During the bankruptcy proceedings, Wells Fargo filed a proof of claim. The bank was permitted to liquidate the Houpts' personal property securing the loan, which reduced the $69,164.13 principal balance of the loan by $6,711.47.

court to accommodate the sale, which provided that the Houpts could sell the Property, distribute $19,156.65 of the proceeds to Wells Fargo to reimburse it for property tax payments, and deposit the remaining $139,500.45 in anticipated sale proceeds with the Clerk of the Court to be distributed "according to the resolution of the priorities of valid liens or other considerations." *Id.* The sale of the Property was completed per the terms of the parties' stipulation.

Additional motion practice ensued, and the state district court issued two memorandum decisions. On January 7, 2014, the district court granted Wells Fargo's motion for summary judgment. The court ruled that the Houpts' claim for wrongful foreclosure was moot, because: (1) Wells Fargo had recorded a written assignment of the beneficiary's interest in the ABC Deed of Trust on September 4, 2012; and (2) the Houpts had voluntarily sold the Property outside the foreclosure proceedings.

In its second memorandum decision issued on February 20, 2014, upon motions for reconsideration, the state district court reaffirmed that the Houpts' claims were moot because of the stipulated sale of the Property. The court determined also that Wells Fargo, by virtue of the earlier assignments due to the bank mergers and the 2004 asset purchase agreement, stepped into the shoes of ABC with respect to the priority date of the lien secured by the Property. The court noted that the failure to record the assignment of the ABC Deed of Trust did not affect the assignment's validity, nor Wells Fargo's first priority lien status as against other lien holders in the Property.

The court ordered the sale proceeds of the Property to be paid to Wells Fargo and, after making certain deductions, awarded Wells Fargo its costs and attorney fees. The

district court's award consisted of $62,452.66 in principal, $17,216.20 in interest, $20,270.69 in costs, and $40,111.50 in attorney fees. The court ordered the entirety of the $139,500.45 on deposit with the court to be disbursed to Wells Fargo to satisfy the award of $140,051.05.

On March 4, 2014, the Houpts timely filed a notice of appeal. On March 9, 2016, the Idaho Supreme Court issued a written opinion affirming the district court's decision. The appellate court agreed that Wells Fargo's recording of the notice of assignment of beneficial interest on September 4, 2012, and the voluntary stipulated sale which occurred in June of 2013, mooted the Houpts' wrongful foreclosure claims against Wells Fargo. However, the court remanded for a determination of what effect, if any, the SBA loan guarantee payment made to Wells Fargo by the SBA on May 4, 2010, may have had on the interest and balance due under the ABC Note. Further, the court vacated the district court's grant of attorney fees and costs for a determination that would exclude all costs and fees incurred by Wells Fargo before it recorded the notice of assignment of beneficial interest in the ABC Note and Deed of Trust on September 4, 2012. *Id*. at 398. The court explained that Wells Fargo should not have been awarded attorney fees for the time expended during its initial improper initiation of foreclosure, before it had properly perfected its secured interest in the Property by recording the notice of assignment. *Id.* at 397-98.[6]

---

[6] Idaho Code § 45-1505 requires the trust deed, any assignments of the trust deed, and any appointment of a successor trustee to be recorded in the mortgage records in the counties in which the property described in the deed is situated before a trustee may foreclose a trust deed by non-judicial foreclosure sale.

During the proceedings upon remand, the Houpts argued that Wells Fargo's failure to follow the SBA's liquidation procedures relieved them of their obligation to pay the full balance remaining on the ABC Note, and should have prevented the bank from recovering attorney fees and reduced its recovery by the amount of the loan guarantee payment. The court disagreed. In a written memorandum issued on November 29, 2016, the court held that Wells Fargo's alleged failure to comply with SBA regulations did not alter the terms of the Note payable to Wells Fargo, and that Wells Fargo had the authority to collect the balance of the Note. The court found also that the SBA loan guarantee payment to Wells Fargo of $56,240.86 to cover the guaranteed portion of the Houpts' loan had no bearing on the amount of interest or the loan balance owed. The court reduced the attorney fee award per the Idaho Supreme Court's directive and awarded $56,908.00 for attorney fees incurred by Wells Fargo after September 3, 2012.

The court entered judgment for Wells Fargo as follows: principal of $62,452.66; interest through October 23, 2013, in the amount of $17,216.20; interest from October 24, 2013, through April 7, 2014, of $1,807.52; costs of $614.18; and attorney fees of $56,908.00, for a total judgment of $138,998.56. The court ordered Wells Fargo to return $501.90 of the $139,500.46 previously distributed to it by the court.

**2.     Undisputed Facts Relevant to the Motions for Summary Judgment**

Turning to the most facts relevant to the motions pending before the Court, the following facts contained in the record are undisputed, and some included above bear repeating to understand the timeline of the present dispute.

On February 5, 2004, Wells Fargo purchased the assets and liabilities of Wells

Fargo N.W., which included the ABC Note. Aff. of Hart Ex. A, *Houpt v. Wells Fargo*,

No. CV2012-3518, Mem. Dec. at 3 (7th Dist. Idaho, Jan. 7, 2014). (Dkt. 27-1 at 3.) *See*

*also* Aff. of Olsen Ex. C. (Aff. of Glorfield ¶ 8, Dkt. 23-7 at 3.) By November 1, 2007,

the Houpts had failed to make "numerous payments on the ABC Note." *Id.* On

November 12, 2008, in response to a letter from Wells Fargo, the SBA sent a letter to

Wells Fargo noting the Houpt Loan was in liquidation status, together with a packet of

information setting forth SBA guidelines applicable to SBA loan liquidation proceedings.

Compl. (Dkt 1-10 at 5 – 8);[7] Aff. of Olsen, Ex. C.[8] (Dkt. 23-8 at 1-27.)

On November 10, 2009, the Houpts ceased making payments on the ABC Note.

Aff. of Hart Ex. A, *Houpt v. Wells Fargo*, No. CV2012-3518, Mem. Dec. at 3 (7th Dist.

Idaho, Jan. 7, 2014). (Dkt. 27-1 at 3.) On April 19, 2010, Gary Glorfield, the Vice

President of Wells Fargo, requested the SBA purchase the guaranteed portion of the

Houpts' loan. Aff. of Olsen Ex. C. (Dkt. 23-5 at 27.) Glorfield's letter to the SBA

indicated that the bank included "copies of the collateral documents pertaining to" the

Houpts' loan. *Id.* On May 4, 2010, the SBA paid Wells Fargo $56,240.86, representing

---

[7] The Complaint attached Wells Fargo's response to the Houpt's request for admission, served in the state case, and dated August 20, 2013. Wells Fargo admitted to the authenticity of a letter sent from the SBA to Wells Fargo, dated November 12, 2008. (Dkt 1-10 at 8.)

[8] Houpt's counsel attached the deposition transcript of Gary Glorfield, including exhibits. During the state court litigation, Houpt had obtained Wells Fargo's SBA loan file prior to taking Glorfield's deposition on October 20, 2016.

the guaranteed portion of the outstanding debt pursuant to the ABC Note. *Id.* (Dkt. 23-5 at 18.)

On August 24, 2012, Wells Fargo N.W. executed an assignment of the ABC Note and Deed of Trust, assigning the same to Wells Fargo. Aff. of Hart Ex. A, *Houpt v. Wells Fargo*, No. CV2012-3518, Mem. Dec. at 4 (7th Dist. Idaho, Jan. 7, 2014); (Dkt. 27-1 at 4.) On September 4, 2012, Wells Fargo recorded the assignment of the Deed of Trust. *Id.*

During the state court litigation the Houpts had commenced on June 22, 2012, against Wells Fargo, Houpt obtained documents from the SBA and discovery from Wells Fargo. On January 10, 2013, the Houpts (at their attorney's direction) requested documents from the SBA pursuant to the Freedom of Information Act. Decl. of Olsen ¶ 9, Exs. A, B, C. (Dkt. 31 at 3, 10-15.) Carol Hulme, attorney advisor to the SBA, responded to the Houpts' FOIA request on January 10, 2013. *Id.* Ex. A. (Dkt. 31 at 10.)[9] Later, on September 10, 2013, Carol Hulme responded to an inquiry by the Houpts' counsel concerning the earlier FOIA request, confirming that all SBA documents had been produced. *Id.* Ex. C. (Dkt. 31 at 15.) Also in September of 2013, the Houpts issued a subpoena to the SBA, after which the Houpts learned the SBA had paid the loan guarantee to Wells Fargo. Compl. ¶ 42. *See also* Aff. of Olsen ¶ 5 (Dkt. 23 at 2); Decl. of

_____

[9] The record does not contain the SBA's response to the Houpts' FOIA request. However, the state district court was privy to some of the contents of the SBA's file. In its memorandum decision deciding the cross-motions for reconsideration, the court had before it a November 12, 2013 Affidavit of Nathan Olsen, which contained documents he had obtained via the FOIA request to the SBA. Wells Fargo objected to the court's consideration of the documents on the grounds that they were hearsay, and the court granted Wells Fargo's motion to strike. Notably, Wells Fargo has not filed a motion to strike the Court's consideration of the FOIA related documents in this record, and the Court is not necessarily considering the underlying documents themselves – only the fact that the SBA file was requested and received.

Olsen ¶ 9, Ex. B (Dkt. 31 at 13.) And on August 20, 2013, Wells Fargo answered the Houpts' requests for admission, wherein the Bank admitted that the SBA had paid to Wells Fargo the loan guarantee in May of 2010. Aff. of Olsen Ex. C. (Dkt. 23-7 at 28.)

On February 20, 2014, the state court issued is memorandum decision and order on the Houpts' and Wells Fargo's respective motions to reconsider filed in the state court litigation. It awarded Wells Fargo $140,051.05, and ordered the clerk to release the funds to Wells Fargo. Aff. of Hart Ex. B, *Houpt v. Wells Fargo*, No. CV2012-3518, Mem. Dec. at 31 (7th Dist. Idaho, Feb. 20, 2014); (Dkt. 27-2 at 31.) Compl. ¶ 46.

On March 27, 2014, the Houpt loan was satisfied by Wells Fargo's receipt of the net proceeds from the voluntary sale of the Property. Decl. of Glorfield ¶ 7. (Dkt. 26.) In April of 2014, Wells Fargo repaid the loan guarantee to the SBA, shortly after Wells Fargo received the proceeds from the sale of the Property. Decl. of Glorfield ¶ 8; Decl. of Piccioni ¶ 3. (Dkt. 25, 26.) Neither Glorfield, who is the Vice President of and a custodian of records for Wells Fargo, nor Piccioni, who is an officer of the United States Small Business Administration and a custodian of records familiar with the Houpts' SBA loan file, included documentation of the loan guarantee repayment with their declarations. However, both Glorfield and Piccioni declared that their statements were based upon their own personal knowledge and made under penalty of perjury.

On December 10, 2014, in response to a third email inquiry from the Houpts, Carol Hulme at the SBA confirmed there were no new documents in the SBA file, and that all documents related to the Houpts' SBA loan had been provided to the Houpts pursuant to their earlier FOIA request. Decl. of Olsen ¶ 9, Ex. C. (Dkt. 31 at 15.)

On September 21, 2016, during the state court proceedings following the Idaho Supreme Court's remand, Wells Fargo produced its entire loan file, including its correspondence with the SBA, in response to the Houpts' requests for production of documents. Compl. ¶ 43. Aff. of Olsen Ex. C. (Dkt. 23-5 – 23-7.) *See also* Aff. of Hart Ex. C, *Houpt v. Wells Fargo*, No. CV2012-3518, Mem. Dec. at 6-10 (7th Dist. Idaho, Nov. 29, 2016); (Dkt. 27-3 at 6-10.)[10]

On October 20, 2016, the Houpts deposed Gary Glorfield, Wells Fargo's 30(b)(6) designee. During his deposition, Glorfield testified he began working for Wells Fargo in January of 1996 and became familiar with the Houpt SBA loan upon its transfer to him on January 20, 2006. Aff. of Olsen Ex. C, Glorfield Depo. at 17. (Dkt. 23-4 at 6.) Glorfield was questioned about Wells Fargo's earlier production of documents. Glorfield Depo. at 25. (Dkt. 23-4 at 8.)[11] He also was asked whether certain documents, such as an SBA litigation plan, wrap-up report, and the like, were sent to the SBA, to which Glorfield testified that he either did not know the answer to the question, or that the document in question was not required to be completed. Glorfield Depo. at 43-82. (Dkt. 23-4 at 13-23.)

On November 29, 2016, the state court issued its memorandum decision on the motions for summary judgment on remand from the Idaho Supreme Court. It found that

---

[10] The bank's loan file was the subject of Wells Fargo's motion to strike.

[11] Houpt provided the entirety of Exhibit 2 to the Glorfield deposition, which Glorfield confirmed during his deposition was the complete Wells Fargo file regarding the Houpt loan, and included all correspondence between Wells Fargo and the SBA.

Wells Fargo was due $138,998.56, and must return approximately $500 of the money previously disbursed to the bank by the state court in 2014. Aff. of Hart Ex. C, *Houpt v. Wells Fargo*, No. CV2012-3518, Mem. Dec. (7th Dist. Idaho, Nov. 29, 2016). (Dkt. 27-3.)

Charles Houpt, as relator, filed this lawsuit against Wells Fargo on September 11, 2017. On October 2, 2018, Houpt filed his motion for partial summary judgment. On October 23, 2018, Wells Fargo filed its motion for summary judgment. On November 13, 2018, Houpt filed a motion to continue the briefing on Wells Fargo's motion for summary judgment, together with a motion to take depositions of designated SBA employees, claiming he needs additional discovery. Nonetheless, Houpt responded to Wells Fargo's motion. (Dkt. 33.)

## DISPOSITION

### 1.    Summary Judgment Standard

Federal Rule of Civil Procedure 56 provides, in pertinent part, that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). For summary judgment purposes, an issue must be both "material" and "genuine." An issue is "material" if it affects the outcome of the litigation; an issue is "genuine" if it must be established by "sufficient evidence supporting the claimed factual dispute ... to require a jury or judge to resolve the parties'

differing versions of the truth at trial." *Hahn v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)); *see also British Motor. Car Distrib. v. San Francisco Auto. Indus. Welfare Fund*, 883 F.2d 371, 374 (9th Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When parties submit cross motions for summary judgment, a court independently searches the record for factual disputes. *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The filing of cross motions for summary judgment "where both parties essentially assert that there are no material factual disputes" does not vitiate a court's responsibility to determine whether disputes as to material facts are present. *See id*.

In considering a motion for summary judgment, a court does not make findings of fact or determine the credibility of witnesses. *See Anderson*, 477 U.S. at 255. Rather, it must draw all inferences and view all evidence in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587-88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).

Houpt asserts he is entitled to summary judgment on the issue of liability under the FCA and the FIRREA. He contends that Wells Fargo falsely represented to the SBA that it held a beneficial interest in the ABC Note such that it was not entitled to payment of the SBA loan guarantee. He claims that Wells Fargo's failure to submit required reports under applicable SBA regulations should subject the bank to penalties under a reverse

false claim theory. And finally, he argues Wells Fargo is liable under the FIRREA because the bank wrongfully initiated foreclosure; retained the SBA loan guarantee payment; and failed to follow SBA reporting regulations.

Wells Fargo asserts it is entitled to summary judgment on Houpt's causes of action brought under the FCA because Wells Fargo did not make a false statement to the SBA, and the bank is not subject to SBA regulations applicable to SBA supervised lenders, thereby excusing it from reporting requirements. Wells Fargo argues also that Houpt's cause of action under the FACA is barred by applicable statutes of limitation. As for Houpt's cause of action seeking civil penalties under the FIRREA, Wells Fargo argues Houpt has not established the bank committed criminal misconduct to support the claim.

For the reasons explained below, the Court will grant Wells Fargo's motion for summary judgment on Houpt's FCA and FIRREA claims. Houpt has failed to establish the essential elements of a cause of action under the FCA, and even if he could do so, the claims are time barred by the applicable statutes of limitations. Nor is Houpt authorized to bring an action for civil penalties under the FIRREA under the plain language of the statute.

**2. False Claims Act**

The False Claims Act (FCA) imposes civil liability on a party who fraudulently induces the government to pay a claim. *See* 31 U.S.C. § 3729(a)(1)(A) and (B). Realistically, the government cannot discover and prosecute all FCA violations, given that "[f]raud permeates generally all Government programs...." *See* S. REP. No. 99-345 at 2 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266 at 5267. Accordingly, the FCA

provides a *qui tam* enforcement mechanism, which allows private parties (relators) to sue on the government's behalf. *See* 31 U.S.C. § 3730(b).

The *qui tam* statute incentivizes whistleblowing by allowing relators to keep a share of the proceeds from judgment or settlement in their cases—as much as 30 percent of the total to which the United States is entitled. *See* 31 U.S.C. § 3730(d)(1) and (2). By offering "private relators bonanzas for valuable information," *United States ex rel. Chovanec v. Apria Healthcare Group, Inc.*, 606 F.3d 361, 364 (7th Cir. 2010), Congress ensured robust enforcement of the FCA's goal of rooting out fraud.

### A. *Fraud*

Houpt alleges that Wells Fargo violated both 31 U.S.C. § 3729(a)(1)(A) and (B) of the FCA. These provisions subject a person to liability to the United States Government for a civil penalty, plus three times the amount of damages the Government sustained because of the act of that person, if the person "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim."

Pursuant to this language, for a "claim" to exist, "it must involve merely some sort of request for the government to pay out money or forfeit moneys due." *U.S. ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). For a claim to be false and conform to the requirements of the FCA, the essential elements that create liability are: "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *U.S.*

*ex rel. Manion v. St. Luke's Reg'l Med. Ctr., Ltd.*, No. CV 06-498-S-EJL, 2008 WL 906022, at *4 (D. Idaho Mar. 31, 2008). A relator has the burden of proving by a preponderance of the evidence each element of a violation of the FCA. *United States ex. rel. Butler v. Hughes Helicopter Co.*, No. CV 89-5760-SVN, 1993 WL 841192 at *13 (C.D. Cal. Aug. 25, 1993).

Houpt's complaint alleges Wells Fargo made the following "false certifications to the SBA" prior to May 4, 2010, the date Wells Fargo received the loan guarantee payment from the SBA: (1) that Wells Fargo was the recorded beneficiary of the ABC Deed of Trust and ABC Note; (2) that the Houpts were in default; and (3) that Wells Fargo had complied with SBA reporting requirements prior to requesting payment of the loan guarantee. Thereafter, Houpt alleges Wells Fargo violated the FCA, because Wells Fargo failed to notify the SBA about the state court litigation, about the Houpts' bankruptcy proceedings, and about the fact it received $140,000 from the voluntary sale of the Houpts' Property.

Houpt alleges that the misrepresentations caused the SBA to pay Wells Fargo the loan guarantee on May 4, 2010, and that if the SBA had known of the information withheld or misrepresented, the SBA would not have paid Wells Fargo the loan guarantee. Houpt's complaint asserts also that the SBA did not receive repayment of the loan guarantee from the sale proceeds of the Property, and thereby suffered damages in the amount of the loss—in this case, the loan guarantee payment ($56,240.86). Finally, Houpt contends that the SBA is entitled to collect "penalties under the False Claims Act for each and every act" of Wells Fargo in violation of the FCA.

Viewing the evidence in the light most favorable to Houpt, and with all reasonable inferences drawn in his favor, there is no legally sufficient evidentiary basis for a reasonable jury to find for Houpt. The FCA is based upon the concept of fraud, and requires a false statement—in this context, it requires evidence of the presentation of a knowingly false material statement designed to induce payment which causes the Government to suffer damages. In this case, there is no evidence that Wells Fargo made a materially false statement to the SBA, nor that the SBA suffered damages.

The state district court's findings belie Houpt's claims that Wells Fargo's representations to the SBA prior to the bank's receipt of the loan guarantee payment on May 4, 2010, were false. According to the state district court's findings, Wells Fargo became the holder of the ABC Note on February 5, 2004, when Wells Fargo purchased Wells Fargo Northwest's assets.[12] The state court found also that the Houpts ceased making payments to Wells Fargo on the ABC Note on November 10, 2009. Under Idaho law, the holder of a note has the right to enforce payment upon default. *See* Idaho Code § 28-3-203;[13] *see also Tanner v. Shearmire*, 772 P.2d 267, 269 (Idaho Ct. App. 1989) ("[T]he holders of a promissory note secured by a deed of trust may sue for a money

---

[12] Glorfield's Supplemental Affidavit dated September 26, 2013, and filed in the state court litigation, stated that "from the date it purchased the SBA Loan and Commercial Property DOT from Wells Fargo Bank Northwest, N.A., [Wells Fargo] has been the holder and owner of the Note and, until it reconveyed the Commercial Property DOT as part of a stipulation among the parties, it was also the holder of the beneficial interest of that deed of trust." Aff. of Olsen Ex. C. (Aff. of Glorfield ¶ 8, Dkt. 23-7 at 3.)

[13] The transfer of an instrument "vests in the transferee any right of the transferor to enforce the instrument, including any right as a holder in due course." Idaho Code § 28-3-203(2).

judgment on the note without first exhausting their security by judicial foreclosure or by exercise of the power of sale.").

After the Houpts' default, Wells Fargo corresponded with the SBA. On April 19, 2010, Gary Glorfield requested that the SBA purchase the guaranteed portion of the loan, and the bank submitted copies of the collateral documents pertaining to the loan. On May 3, 2010, the SBA corresponded with Gary Glorfield and indicated the loan had been approved and "scheduled for purchase." Wells Fargo received payment of the loan guarantee on or about May 4, 2010, in the amount of $56,240.86. Aff. of Olsen Ex. C. (Dkt. 23.) The FCA concerns itself with the presentation of a lie. *United States ex. rel. Butler*, 1993 WL 841192 at *13. Here, however, Wells Fargo truthfully represented itself as the holder of the ABC note with the right to enforce its terms, including the right to payment.[14]

Even assuming Houpt's allegations in this suit could rise to the level of a false statement or misrepresentations by Wells Fargo to the SBA, the SBA's own knowledge negates the requisite intent under the FCA. Houpt claims Wells Fargo submitted false documents to the SBA to induce payment of the loan guarantee, and failed to adequately comply with SBA reporting requirements both before and after its receipt of the money. However, because FCA liability requires an element of fraud or falsity, "courts have

---

[14] Houpt seems to confuse the concept of recording a lien with transfer of an instrument. An instrument, such as a promissory note secured by a deed of trust, evidences a right to payment, and the right to payment is transferred by delivery of possession of the instrument to a transferee for value. Idaho Code § 28-3-203. Recording, in contrast, simply provides notice to later purchasers and mortgagees. Idaho Code § 55-811.

disallowed FCA claims where the Government knew, or was in possession at the time of the claim, of the facts that make the claim false. Only if the government gets something less than or different from that which it expected can it be said to have suffered the kind of injury necessary to invoke FCA liability." *Boisjoly v. Morton Thiokol, Inc.*, 706 F.Supp. 795, 809 (D. Utah 1988) (internal citations omitted). *See also U.S. ex. rel. Kreindler & Kreindler v. United Technologies Corp.*, 777 F.Supp. 195, 204 (N.D.N.Y. 1991) (holding that relator had no cause of action under the FCA because the government knew of the very facts or characteristics which allegedly made the defendant's claims false).

Here, the Complaint details the SBA's knowledge of the alleged misrepresentations and omissions related to Wells Fargo's paperwork, both when the bank requested payment of the loan guarantee and later, when the bank allegedly failed to submit required reports to the SBA. Beginning in 2008, the SBA was sending and receiving correspondence to and from Wells Fargo concerning the Houpts' loan. Compl. ¶ 43. The Complaint sets forth in great detail the correspondence, or lack thereof, between the SBA and Wells Fargo from 2008 through 2010. Compl. ¶¶ 42-43. In other words, the SBA knew of Wells Fargo's alleged lack of compliance with regulatory reporting requirements.

Put simply, Wells Fargo was not hiding the ball. The SBA, if it had the right to receive regular updates or other reports required under SBA regulations, as Houpt alleges here, the SBA would have known it was not receiving them. Similarly, if there were material misstatements made by Wells Fargo regarding its right to receive payment of the

loan guarantee under the terms of the ABC Note, the SBA would have been on notice when the SBA received Wells Fargo's request for payment in 2010.

Considering the SBA's knowledge, the Court cannot find the element of scienter required to support an FCA claim. Here, the Complaint itself sets forth that the government knew, or should have known, of the very facts which allegedly make the claim false. Accordingly, no claim is stated under the FCA. *Boisjoly*, 706 F.Supp. at 810. *See also U.S. ex. rel. Butler v. Hughes Helicopter Co*., No. CV89-5760-SVN, 1983 WL 841192 13-14 (C.D. Cal. 1993) (holding that the relator did not present legally sufficient evidence that any allegedly false statement or claim was made with the requisite intent when there was an open dialogue between the contractor and the Army showing that the Army was aware of the helicopter testing problems).

Nor has Houpt shown that Wells Fargo's alleged regulatory reporting omissions are material. Houpt claims Wells Fargo failed in all respects with certain regulatory requirements material to the SBA, such that the SBA should not have paid the loan guarantee, and Wells Fargo should therefore be subject to penalties under the FCA for failing to file required reports both before and after the bank's receipt of the loan guarantee payment. However, under the FCA, the misrepresentation must be material to the other party's course of action. *Univ. Health Servs., Inc. v. United States*, 136 S. Ct. 1989, 2001, 195 L. Ed. 2d 348 (2016). The FCA is not "an all-purpose antifraud statute, or a vehicle for punishing garden-variety breaches of contract or regulatory violations." *Univ. Health Servs., Inc*., 136 S. Ct. at 2003. Where the Government "pays a particular

claim in full despite its actual knowledge that certain requirements were violated, that is very strong evidence that those requirements are not material." *Id.*

Here, the only claim the SBA paid was Wells Fargo's request for payment of the loan guarantee. Houpt asserts that Wells Fargo induced the SBA to pay the loan guarantee without confirming that: (1) the bank was the appropriate beneficiary with the right to foreclosure; (2) the Houpts were in default on the ABC Note; (3) Wells Fargo was the recorded beneficiary of the ABC Deed of Trust; and (4) Wells Fargo had complied with regulatory requirements. Yet, the SBA paid the loan guarantee. Either Wells Fargo was truthful in its representations, as explained above, or the SBA reporting requirements Houpt alleges were violated were not material to the SBA's decision to pay the loan guarantee.

The fatal flaw to Houpt's FCA claim, however, is the lack of any damages suffered by the Government. Houpt asserts that Wells Fargo failed to repay the SBA loan guarantee after Wells Fargo received the proceeds from the voluntary sale of the Property on March 27, 2014. However, the undisputed evidence from both Glorfield, Wells Fargo's representative, and Piccioni, the SBA's representative, is that Wells Fargo repaid the loan guarantee in April of 2014. Houpt has no evidence to the contrary, and the absence of formal documentation does not refute the uncontroverted testimony of the two individuals responsible for the respective institutional records on the part of both Wells Fargo and the SBA.

**B.    *Reverse False Claim***

A reverse false claim may be brought under the FCA pursuant to 31 U.S.C. § 3729(a)(1)(G), which prohibits the knowing use of a false record or statement material to an obligation to pay or transmit money to the Government. In other words, "reverse" FCA liability stems from a fraud perpetuated to avoid a debt to the government, rather than to obtain payment from the government. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1056 (9th Cir. 2011) (reverse false claims provision "expands the meaning of a false claim to include statements to avoid paying a debt or returning property to the United States").

The Complaint alleges no specific reverse false claim under 31 U.S.C. § 3729(a)(1)(G).[15]

However, Houpt's argument advanced in his memorandum filed in support of his motion for partial summary judgment is that the failure to submit required reports constitutes a reverse false claim under the FCA. Based upon the legal authority cited above, it is not clear how such facts, even if true, could constitute a cause of action under 31 U.S.C. § 3729(a)(1)(G). Nonetheless, the Court will address the argument.

Houpt argues that, as a CDC/Supervised Lender, Wells Fargo had a contractual duty to comply with SBA reporting requirements. Houpt contends that Wells Fargo's failure to submit the reports required by the SBA program mandates imposition of a civil

---

[15] Even construing the Complaint in a manner most favorable to Houpt, the only allegation that resembles a reverse false claim is that Wells Fargo did not repay the loan guarantee. However, as explained in the preceding section, the undisputed evidence is to the contrary.

penalty up to $6,331 per day per report.[16] Houpt asserts that, by failing to submit "hundreds of required reports to the SBA," Wells Fargo "deprived the SBA from receiving the penalties imposed by law for late reports." He requests that the Court find in his favor and hold Wells Fargo liable for these unpaid penalties. Pl.'s Brief at 12-13. (Dkt. 22-1.)

The civil penalty for late submission of reports required under SBA regulations is imposed upon "SBA Supervised Lenders." 13 C.F.R. § 120.465(a). An SBA Supervised Lender "is a 7(a) Lender that is either a Small Business Lending Company or a NFRL." 13 C.F.R. § 120.10. The regulations indicate that the "SBA will notify the SBA Supervised Lender in writing of the amount of civil penalties imposed either upon receiving the required complete report or at such other time as SBA determines." 13 C.F.R. § 120.465(c).

In response to Houpt's argument, Wells Fargo submitted the declaration of Piccioni. Under penalty of perjury, Piccioni indicated that Wells Fargo is a member of "SBA's Preferred Lender Program as defined by 13 C.F.R. §§ 120.450-120.453. It is neither an SBA Supervised Lender, nor a Certified Development Company, as those terms are used in 13 CFR Part 120." (Dkt. 25 at 2.) In other words, Wells Fargo does not meet the definition of "SBA Supervised Lender," and therefore is not subject to the regulations at 13 C.F.R. § 120.464.[17] Houpt has presented no evidence to the contrary.

---

[16] It appears Houpt argues that, for each day the required report is late, a civil penalty is imposed.

[17] 13 C.F.R. § 120.464 sets forth the reports that an SBA Supervised Lender must submit to the SBA. 13 C.F.R. § 120.465 establishes civil penalties for late submission of required reports.

Moreover, even if the above regulations are applicable to Wells Fargo, Houpt has not presented evidence establishing intent or materiality. The SBA's knowledge of Wells Fargo's failure to submit reports, required or otherwise, is established by the record before the Court. Houpt's FOIA request and Wells Fargo's production of documents during the state court litigation demonstrated that the SBA submitted pamphlets to Wells Fargo describing the reports the SBA required from SBA Supervised Lenders. Yet, the SBA knew no such reports were submitted, as Houpt alleges the SBA did not receive any reports after the loan guarantee payment was made to Wells Fargo in 2010. *See* Decl. of Olsen ¶ 5. (Dkt. 23.) Nonetheless, the SBA paid Wells Fargo the SBA loan guarantee, and received repayment of the same in April of 2014 once Wells Fargo obtained the sale proceeds from the Property.

Given the SBA knew or should have known of Wells Fargo's alleged failure to submit reports, the SBA had every opportunity to notify Wells Fargo of any civil penalties applicable for the failure to complete the reports. Yet, the SBA did not notify Wells Fargo of the imposition of any such civil penalties.[18]

---

[18] The Court notes also that Houpt's claims fail for lack of any nexus between the alleged false or fraudulent statements made and particular claims for payment made to the SBA. FCA damages are restitutive in nature, in that the government cannot recover if 'there is no showing that it would not ultimately have paid out the same amount of money' even in the absence of any false statement." *U.S. ex. rel. Butler*, 1993 WL 841192 at *16 (quoting *United States v. Woodbury*, 359 F.2d 370, 379 (9th Cir. 1966)). Here, the alleged failure to file reports resulted in no loss to the SBA because Wells Fargo repaid the loan guarantee in April of 2014.

Houpt has failed to state a reverse false claim under 31 U.S.C. § 3729(a)(1)(G),

nor can he advance one based upon allegations that Wells Fargo failed to submit reports

required of SBA Supervised Lenders pursuant to 13 C.F.R. § 120.464.

### C.    *Statute of Limitations*

Civil actions brought under the FCA must be filed within one of two limitations

periods, depending upon whether equitable tolling applies. 31 U.S.C. § 3731(b) states

that a civil action under 31 U.S.C. § 3730 may not be brought:

> (1) more than 6 years after the date on which the
> violation of section 3729 is committed, or
>
> (2) more than 3 years after the date when facts material
> to the right of action are known or reasonably should have
> been known by the official of the United States charged with
> responsibility to act in the circumstances, but in no event
> more than 10 years after the date on which the violation is
> committed,
>
> whichever occurs last.

31 U.S.C. § 3731(b).

The United States Court of Appeals for the Ninth Circuit permits *qui tam* plaintiffs

to invoke the equitable tolling provision of 31 U.S.C. § 3731(b)(2).[19] Therefore, the

limitations period begins to run from the time the plaintiff "knew or reasonably should

---

[19] There is a split of authority, with some courts holding that the tolling provision of 31 U.S.C. § 3731(b)(2) applies only to actions in which the government intervenes. *See United States ex. rel. Thistelwaite v. Dowty Woodville Polymer, Ltd.*, 6 F.Supp.2d 263 (S.D.N.Y. 1998); *United States ex. rel. El Amin v. George Washington Univ.*, 26 F.Supp.2d 162 (D.D.C. 1998). Recently, the United States Court of Appeals for the Eleventh Circuit concluded the FCA's three-year limitations period under Section 3731(b)(2) applies to a relator's *qui tam* action, but held the period is triggered by a government official's knowledge of the fraud, rather than the relator's knowledge. *United States ex rel. Hunt v. Cochise Consultancy, Inc.*, 887 F.3d 1081, 1083 (11th Cir. 2018), *cert. granted sub nom. Cochise Consultancy, Inc. v. U.S. ex rel. Hunt*, No. 18-315, 2018 WL 4385694 (U.S. Nov. 16, 2018).

have known of the facts underlying his cause of action." *U.S. ex. rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211 (9th Cir. 1996), *vacated on other grounds*, 521 U.S. 1101 (1997).

Wells Fargo argues Houpt's claims that Wells Fargo fraudulently induced the SBA in May of 2010 to pay the loan guarantee are time barred under either subsection (b)(1) or subsection (b)(2) of the statute. First, Wells Fargo argues that the Complaint in this case, filed on September 11, 2017, was filed more than six years after Wells Fargo obtained the loan guarantee payment from the SBA on May 4, 2010. Alternatively, Wells Fargo asserts that the state court found that Houpt had knowledge of the facts upon which his claims rely as of June 22, 2012, or at the very latest January 7, 2014, when final summary judgment was entered in the state court action. All these dates are more than three years prior to the filing of the Complaint in this matter. Houpt, on the other hand, argues that he did not have knowledge of the FCA claims until he deposed Glorfield, Wells Fargo's 30(b)(6) designee, on October 20, 2016, which is within the three-year limitation period set forth in 31 U.S.C. § 3731(b)(2).

Houpt, as Relator, seeks to toll the statute of limitations based upon when he asserts he discovered the alleged fraud. However, courts interpreting analogous tolling provisions have indicated that, "once officials who could take action recognize the essential elements of the cause of action, the statute is not tolled." *Kreindler*, 777 F.Supp. at 205. In other words, the relator's knowledge is not relevant if the government has prior knowledge of the facts underlying the FCA claim. *See U.S. ex rel. Koch v. Koch Indus., Inc.*, 188 F.R.D. 617, 638 (N.D. Okla. 1999) (discussing *Kreindler*). The Court therefore rejects Houpt's argument that, under the facts here, the statute of limitations should be

tolled until he was aware of the information regarding regulatory reporting deficiencies gained from the deposition of Glorfield.

The alleged misrepresentation of Wells Fargo's right to enforce the ABC Note, and the later disregard of SBA reporting regulations, forms the basis of Houpt's FCA claims. It is clear from the record that the facts material to Houpt's cause of action under the FCA would have been known to the SBA as early as 2008, when Wells Fargo first contacted the SBA about the Houpts' default, and most certainly by May of 2010, when Wells Fargo requested and received the loan guarantee payment from the SBA. After Wells Fargo received the loan guarantee payment, the SBA would have known what reports, if any, it was supposed to, and did not, receive related to the payment of the loan guarantee.

Generously giving Houpt the benefit of all inferences in his favor, the latest date possibly triggering the statute of limitations is April 30, 2014, given Wells Fargo (and the SBA) confirms the bank repaid the SBA loan guarantee some time during that month, and the SBA loan file was closed. At that time, the SBA would have known what reports, documents, or other items were supposed to be, but were not included, in its loan file, and whether, based upon these documents or lack thereof, it should have paid the loan guarantee in May of 2010.

Consequently, assuming for the sake of argument that Wells Fargo made false representations to the SBA to induce payment of the loan guarantee (which the Court explained above is not established), the statute of limitations began to run as early as 2008, when Wells Fargo first contacted the SBA about the Houpt loan and indicated it

was in default. If Houpt's claim is viewed as relying upon Wells Fargo's alleged misrepresentation in May of 2010 that the bank was entitled to enforce the terms of the ABC Note and seek payment of the loan guarantee, the statute of limitations began to run no later than May 4, 2010. These two dates fall outside of the six-year statute of limitation in 31 U.S.C. § 3731(b)(1). And, utilizing the last possible date of April 30, 2014, when Wells Fargo paid the SBA, this date falls outside the three-year limitation period set forth in 31 U.S.C. § 3731(b)(2).

Even if the Court examines what Houpt knew and when, he fails to support his argument for tolling the statute of limitations until October 20, 2016. Houpt contends that the "essence of Relator's claim" is that Wells Fargo "made a number of false statements and certifications to the SBA that resulted" in Wells Fargo wrongfully obtaining the loan guarantee payment on March 4, 2010, and thereafter proceeding with the "liquidation of the SBA guaranteed property."[20] Def.'s Brief at 5. (Dkt. 33.) The Complaint details when Houpt acquired his knowledge. Specifically, paragraph 42 sets forth that Houpt sued Wells Fargo in state court on the basis that Wells Fargo allegedly did not have a beneficial interest in the property. The state court lawsuit was filed on June 22, 2012, more than three years prior to the filing of this action on September 11, 2017. Paragraph 42 of the Complaint states also that, in September of 2013, the Houpts issued a subpoena

---

[20] Houpt misconstrues what occurred during the state court litigation. Although Wells Fargo initiated foreclosure proceedings, the bank did not "liquidate" the property pursuant to non-judicial foreclosure proceedings. Rather, the state court approved the parties' stipulation allowing for the Houpts to voluntarily sell the Property. The state court retained the sale proceeds for distribution to creditors, including Wells Fargo, according to the creditors' lien priority date and amounts of the liens.

to the SBA for the records pertaining to the Property, "after which [Houpt] learned that SBA had paid Wells [Fargo] NA $58,187.30 on a pre-liquidation payment of the guarantee." September 30, 2013 is more than three years prior to the filing of this action on September 11, 2017.

Houpt alleges a list of later non-compliance by Wells Fargo with regulatory reporting requirements under the SBA, which occurred after the bank received the loan guarantee payment on March 4, 2010. Compl. ¶ 43. However, Houpt misinterprets the breadth of the FCA. Even if Houpt did not learn of these regulatory violations until he deposed Glorfield on October 20, 2016, "violations of laws, rules, or regulations alone do not create a cause of action under the FCA." *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir. 1996). Wells Fargo's later non-compliance with SBA reporting regulations after receipt of the loan guarantee did not constitute a prerequisite to obtaining a government benefit—i.e., the payment of the SBA loan guarantee. *See id.*

Regarding Houpt's argument that more discovery is needed to demonstrate what the SBA knew, discovery will not help advance his FCA claims. Additional discovery will not enable Houpt to proceed, as the existing record already establishes what the government knew and when. *Kreindler*, 777 F.Supp. at 205 (denying further discovery to demonstrate government's lack of knowledge when existing record was sufficient to show what the government knew). Houpt's Complaint also sets forth the dates upon which he acquired knowledge of the facts forming the basis for his cause of action under the FCA.

In light of the above, the Court finds Houpt's causes of action under the FCA are time-barred by the applicable statutes of limitation.

3.    **FIRREA Claims**

Houpt seeks civil penalties pursuant to the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1833a. He bases his claims on the grounds that: (1) Wells Fargo wrongfully initiated foreclosure proceedings on the Property; (2) Wells Fargo fraudulently retained the SBA loan guarantee payment and did not account for the sale proceeds of the Property; and (3) Wells Fargo failed to follow SBA procedures, guidelines and quality controls.[21] Houpt asserts that additional discovery "will reveal numerous other failures [of Wells Fargo] to fulfill its obligations with regard to SBA loans." He seeks a fine of no less than one million dollars for each violation of FIRREA.

Congress passed FIRREA in 1989 in response to a crisis in the nation's banking and savings and loan industries. *Sharpe v. F.D.I.C.*, 126 F.3d 1147, 1154 (9th Cir. 1997). The statute allows the FDIC to act as a receiver or conservator of a failed institution for the protection of depositors and creditors. *Telematics Int'l v. NEMLC Leasing Corp.*, 967 F.2d 703, 705 (1st Cir. 1992). Congress granted the FDIC broad powers in conserving and disposing of the assets of failed institutions. *Sharpe*, 126 F.3d at 1154.

---

[21] The Complaint contains thirteen "improper acts" allegedly committed by Wells Fargo that Houpt claims violated FIRREA, while his memorandum filed in support of his motion for partial summary judgment states the motion encompasses "three categories" of violations.

FIRREA provides also for civil penalties to be assessed by a court against individuals who violate enumerated criminal statutes applicable to banks and financial institutions. Specifically, the statute provides:

> Whoever violates any provision of law to which this section is made applicable by subsection (c) of this section shall be subject to a civil penalty….
> **(c) Violations to which penalty is applicable**
> This section applies to a violation of, or a conspiracy to violate---
>> (1) section 215, 656, 657, 1005, 1006, 1007, 1014, or 1344 of Title 18;
>> (2) section 287, 1001, 1032, 1341 or 1343 of Title 18 affecting a federally insured financial institution; or
>> (3) Section 645(a) of Title 15.

12 U.S.C. § 1833a(a), (c). The statute provides also that a "civil action to recover a civil penalty under this section shall be commenced by the Attorney General." 12 U.S.C. § 1833a(e).

Houpt may not pursue civil penalties under FIRREA. Rather, the statute is plain that the right to do so is reserved to the Attorney General. *See, e.g., Lundstedt v. Deutsche Bank Nat'l Tr. Co*., No. 3:13-CV-001423 (JAM), 2016 WL 3101999, at *5 (D. Conn. June 2, 2016) ("Section 1833a does create civil liability for fraud, but the statute's plain text clarifies that '[a] civil action to recover a civil penalty under this section *shall be commenced by the Attorney General*.'"); *Breiding v. Wilson Appraisal Servs., Inc*., No. 5:14CV124, 2016 WL 1175257, at *5 (N.D.W. Va. Mar. 23, 2016) (holding that "the right to recover a civil penalty likely does not lie with the plaintiffs in this case…."); *U.S. v. Meisinger*, No. EDCV 11-00896 VAP, 2011 WL 4526082, at *4 (C.D. Cal. Aug. 26, 2011) (setting forth the statutory scheme, and emphasizing that "an Attorney General

shall bring a civil action to recover a civil penalty under the section."); *Strecker v. LaSalle Bank, N.A.*, No. 04-C-440-C, 2004 WL 2491596, at *2 (W.D. Wis. Nov. 3, 2004) (12 U.S.C. § 1833a makes clear that "a civil action to recover a civil penalty under this section shall be commenced by the Attorney General."); *Hicks v. Resolution Tr. Corp.*, 767 F. Supp. 167, 171 (N.D. Ill. 1991), *aff'd*, 970 F.2d 378 (7th Cir. 1992) ("Any civil action to recover a civil penalty under 12 U.S.C. § 1831a must be commenced by the Attorney General.").

Houpt argues 12 U.S.C. § 4201 and 12 U.S.C. §§ 4205-07 permit him to file a declaration and, similar to a *qui tam* action brought for violations of the FCA, the Attorney General may elect to turn the matter over to private counsel for the declarant to proceed with a civil enforcement action under 12 U.S.C. § 1833a. Houpt, however, misconstrues the plain language of 12 U.S.C. § 4201 and the statutory language that follows. 12 U.S.C. § 4201(b) clarifies that the declaration must first be filed with the Attorney General of the United States, rather than first filed as a lawsuit in district court. *Lundstedt*, 2016 WL 3101999 at *5. There are no allegations in the Complaint that Houpt complied with Section 4201(b).

Moreover, 12 U.S.C. § 4202, which sets forth the required contents of the declaration, presumes that the government has already filed suit. Section 4202(3) requires the declaration to "contain at least 1 new factual element necessary to establish a prima facie case that was unknown to the Government at the time of filing…." Again, there are no allegations or evidence here that a declaration by Houpt was filed with the Attorney

General satisfying 12 U.S.C. § 4202(3) and the other requirements set forth in 12 U.S.C. § 4202.

Next, 12 U.S.C. § 4205 limits the rights of the declarant. 12 U.S.C. § 4205(a) ("A person who has filed a declaration that meets the requirements of sections 4201 through 4204 of this title shall have the rights stated in this section."). While 12 U.S.C. § 4205(b) states that, if the Attorney General determines that a cause of action referred to in section 4201 should be referred to private counsel, nothing in Section 4205 indicates the declarant may pursue the action on behalf of the Government. Rather, "declarant's counsel shall act in accordance with subchapter III of this chapter." 12 U.S.C. § 4205(b).

Houpt cites 12 U.S.C. § 4207 as authority for his prosecution of this action on behalf of the Government. Again, he is mistaken. 12 U.S.C. § 4207 provides that, if the Attorney General notifies the declarant in writing that his or her allegations have not been addressed, the declarant may, within thirty days of receiving the written notice, "notify the Attorney General to award a contract pursuant to subchapter III of this chapter to pursue the case." 12 U.S.C. § 4207(a). Subchapter III, set forth in 12 U.S.C. §§ 4241 – 4247, requires the Attorney General to enter into "contracts retaining private counsel to furnish legal services, including representation in investigation,…litigation, and execution of judgments in the case of any civil action referred to in section 4201 of this title or section 4225 of this title." 12 U.S.C. § 4241(a). The Attorney General must respond to the declarant's request to award a contract, and either grant a contract, or proceed with an action. 12 U.S.C. § 4207(b).

There are no allegations in the Complaint, or evidence proffered by Houpt in response to Wells Fargo's motion for summary judgment, that the Attorney General granted a contract to Houpt's counsel pursuant to subchapter III of the statute. Even if a contract is awarded, Subchapter III does not authorize a private citizen to maintain an action in either his own name or on behalf of the government. Private counsel retained under subchapter III "represent[s] the United States," not the declarant. 12 U.S.C. § 4243.

Elsewhere, the statute is plain that private citizens like Houpt have no ability to prosecute actions seeking civil penalties under FIRREA. 12 U.S.C. § 1833a(g) sets forth that the Attorney General is equipped with the power to "conduct a civil investigation in contemplation of a civil proceeding under this section," and may, by subpoena, summon witnesses and require the production of documents relevant to the Attorney General's inquiry. Nothing in the statute grants a private citizen such authority.

Nor does a private citizen have any right to recovery of the civil penalty set forth in 12 U.S.C. § 1833a(b). 12 U.S.C. § 4205(d)(1) indicates that, when the "United States acquires funds or assets…and the Attorney General determines that the judgment…was based in whole or in part on the information contained in a valid declaration filed under section 4201 of this title, the declarant" has the right to share in the recovery. However, the Attorney General makes that determination. 12 U.S.C. § 4205(d)(1)(A). *See also* 12 U.S.C. § 4210 (providing that an award under this chapter may be paid to a declarant "from the amounts recovered through civil actions based in whole or in part on the information provided in a valid declaration under this chapter."). In other words, private citizens have no ability to collect the civil penalties in the first instance, and the Attorney

General determines the amount, if any, to be paid to the declarant if civil penalties are collected by the Attorney General.

In light of the express statutory scheme and the referenced legal authorities, Houpt has presented no legal authority to prosecute a FIRREA action seeking civil penalties under 12 U.S.C. § 1833a against Wells Fargo in this action. Further, even if Houpt had properly filed the requisite declaration and his counsel had been awarded a contract under subchapter III of the statute, Houpt has not explained how Wells Fargo's purported conduct violates the sections of Title 18 listed in 12 U.S.C. § 1833a(c).

These statutes require criminal conduct to support a civil action under FIRREA. Houpt argues that his FIRREA claims are based upon the premise that Wells Fargo made "false" claims or "false" statements, which satisfy the requirements of various sections of Title 18.[22] But, Houpt has not set forth facts establishing that Wells Fargo's conduct satisfies any of the elements of fraud or the making of false statements under any of the criminal statutes referenced in his briefing.

For the foregoing reasons, the Court finds Houpt has failed to state a claim under FIRREA as a matter of law, and Wells Fargo's motion for summary judgment of this claim must be granted.

---

[22] Houpt mentions 18 U.S.C. §§ 257, 1005, 1006, 1007, 1341, 1343, and 1344 in his brief filed in support of his motion for partial summary judgment. He does not explain, however, how Wells Fargo's conduct satisfies any of the elements of the enumerated criminal statutes.

### 4.     Other Motions

Houpt has moved pursuant to Fed. Rule Civ. P. 56(d)[23] for a continuance within which to respond to Wells Fargo's motion for summary judgment and, in conjunction, has filed a motion seeking to take depositions of certain SBA employees. He claims that, to adequately oppose Wells Fargo's motion, he must depose Vanessa Piccioni, who submitted a declaration in support of Wells Fargo's motion for summary judgment regarding the repayment of the loan guarantee. He seeks also to depose Carol Hulme, who responded to Houpt's FOIA request and later written inquiries to the SBA. He contends that this additional discovery will "show the lack of documentation and compliance by Wells [sic] NA to SBA regulations pertaining to the liquidation of Mr. Houpt's property – including the lack of documented proof that the SBA guarantee was ever repaid."

Because the Court has concluded, as explained above, that Houpt has failed to state a claim under either the FCA or under FIRREA, and that even if he could allege facts under the FCA his claims are time-barred, the Court finds the requested discovery would be futile.[24] It is therefore unnecessary for the Court to consider the Government's arguments submitted in opposition to Houpt's motion to depose the SBA employees.

---

[23] Houpt cites to Fed. Rule Civ. P. 56(f). However, the rule was amended, and the provision previously codified at subsection (f) is now subsection (d). Fed. Rule Civ. P. 56(d) provides that when a nonmovant "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may" defer consideration of the motion, or allow time to conduct additional discovery.

[24] The Court notes also that Houpt filed a memorandum in opposition to Wells Fargo's motion for summary judgment. (Dkt. 33.)

## CONCLUSION

Houpt cannot state a claim under the FCA based upon the undisputed facts in the record. Further, even if Houpt could establish a violation of the FCA, his claims are time-barred. As to his FIRREA claims, Houpt has no cause of action for civil penalties based upon the plain language of the statute.

## **<u>ORDER</u>**

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)     Plaintiff's Motion for Partial Summary Judgment (Dkt. 22) is **DENIED**.

2)     Defendant's Motion for Summary Judgment (Dkt. 24) is **GRANTED**. All claims against Defendant are dismissed with prejudice.

3)     Relator's 56(f) Motion for A Continuance of Defendant's Motion for Summary Judgment To Allow For Additional Discovery (Dkt. 30) is **DENIED.**

4)     Plaintiff's Motion for Order of *Duces Tecum* Deposition For Certain SBA Employees (Dkt. 32) is **DENIED**.

5)     A separate judgment will be entered by the Court.

6)     The Clerk is directed to close this case.


DATED: February 13, 2019

Honorable Candy W. Dale
United States Magistrate Judge